[File No. 7024]

ROY FUNSTON, Appellant, v. LOUISE LITTLE, as administratrix of the estate of Clayton Little, deceased; Louise Little; and W. A. Hart, as administrator of the estate of Clayton Little, deceased, and Western Surety Company, a corporation, Respondents.

(25 NW2d 92)

Opinion filed October 26, 1946. Rehearing denied Dec. 20, 1946.

*F. E. McCurdy,* for appellant.
*J. K. Murray* and *William S. Murray,* for respondents.

BURR, J. In 1944 Clayton Little owned land in Burleigh County. On April 26, 1944, he, as a party of the second part, and the plaintiff entered into a written contract wherein the plaintiff, "covenants and agrees—*to well and faithfully till and farm dur-*

*ing the season of farming during the year 1944"* the land involved. The contract contains provisions as to grain to be sown and the usual agreements as to title to crops until division; that the owner was to furnish machinery; plaintiff had "the option of renting the premises for the year of 1945;" had the "privilege of pasturing 10 head of cows free of charge" and many other features. (Italics ours.)

It is not necessary to set forth the contract in full, but it has this important provision which is the bone of contention here and the construction of which is the important issue. Little was, "to furnish 25 cows and one Bull, and the party of the first part (Funston) to receive one-half of all increase thereof *during this lease.* And on all the cows which first party (plaintiff) milks, the party of first part shall receive all the milk and cream, but the one-half of the increase from said cows that otherwise would go to first party shall go to second party. The first party agrees to pay second party $100 cash for pasture, hay land and use of equipment." (Italics ours.)

The whole controversy centers around the construction to be given to this provision of the contract. There were sixteen calves on the place when plaintiff took it over, the oldest being a month to six weeks old, the youngest about two weeks old and a seventeenth calf was dropped in the following June. The sixteen went into the possession of the plaintiff immediately upon the execution of the contract.

Little died June 10, 1944. Louise Little, his widow, assumed charge at once as if she were the administratrix.

On September 1, 1944 Mrs. Little sold these seventeen calves for $712.96, after deducting the costs of transportation and commission charges. Evidently this check was made out in her name and that of Funston as the "Settlement Agreement" hereinafter set out required both parties to endorse the check so that "the proceeds thereof (could be) divided fifty-fifty, . . . ."

On September 6, 1944 the county court appointed Mrs. Little administratrix. She gave bond with Western Surety Company as surety and the bond was approved on September 20, 1944.

On said date the county court issued formal letters of administration.

On September 18, 1944 plaintiff and Louise Little met to adjust accounts and entered into the following "Settlement Agreement":

### I.

"This agreement made this 18th day of September, 1944 between Louise Little, Administratrix of the Estate of Clayton Little, party of the first part and Roy Funston, party of the second part:

Party of the first part is to give party of the second part one-half the proceeds of a check in the amount of $712.96, to-wit: $356.48 same representing the sales price of one-half interest in seventeen (17) sucking calves, the said check to be endorsed by both of said parties and the proceeds thereof divided fifty-fifty as aforementioned; that same represents second party's entire interest in the increase of livestock owned by the Estate on the premises rented by the Deceased, Clayton Little, for the farming season of 1944; that all the rest of the increase of such livestock is admitted to be owned by first party; that this constitutes a settlement of everything with reference to the increase of the livestock under said rental contract.

### II.

Party of the second part agrees to quit possession of the premises rented, to-wit: All of Section 28 and the North Half of the North Half of Section 32 ($N\frac{1}{2}N\frac{1}{2}$–32), Northeast Quarter of ($NE\frac{1}{4}$) Section 33, Northwest Quarter Section 34 ($NW\frac{1}{4}$) all in Township 143, Range 77, on or before October 1, 1944 and further agrees to peacefully deliver up possession of said premises on or before said time.

### III.

Party of the second part agrees to pay party of the first part upon the execution and delivery of this settlement agreement the sum of $100.00 rental for the hay on said premises under said lease, party of the first part grants party of the second part permission to leave said hay on said premises at his own risk

and peril up until April 1, 1945 and party of the second part to have the privilege either himself, his servant or a purchaser of the hay to remove same from said premises up until April 1, 1945.

Roy Funston
Louise Little"

On the same day both endorsed the check for $712.96 and Mrs. Little received it. The plaintiff gave Louise Little his check for $121.30 in full of all payments he was to make to the estate. Louise Little gave the plaintiff her check for $356.48, and signed the same, "Louise Little, Admix. of Clayton Little estate." The parties thus exchanged checks in accordance with the terms of this "settlement agreement." Louise Little cashed the check she received from plaintiff, stopped payment upon the check which she had given him and deposited the check for $712.96 in her account as administratrix of the estate.

The complaint against her and her surety sets forth the contract, the settlement, the giving of the check; permission of the county court to commence action and the default in the payment of the check.

The answer practically admits this complaint but as defense alleges that the check issued was given wholly without consideration, "was executed and delivered under misapprehension of the law and the facts in the matter pertaining thereto"; that she did not sign the check in a personal capacity but as administratrix and at the time the check was executed she was not the administratrix of the estate.

Western Surety Company answered admitting the issuance of a surety bond for Louise Little, but alleged that Letters of Administration had not been issued to her at the time she entered into the settlement agreement and "did the things specified in the complaint." The surety also states it "realleges each and every allegation of the answer of Louise Little—and makes same a part hereof with the same force and effect as if same was fully set out herein."

Before the trial of the case the plaintiff, defendants Louise

Little, Western Surety Company, and W. A. Hart, entered into the following stipulation, making Hart a co-defendant:

"Whereas in the above entitled action one W. A. Hart has been appointed as successor administrator of the estate of Clayton Little Deceased and has qualified as such administrator and the said Western Surety company is the surety on his bond as such administrator and said W. A. Hart is now a necessary party defendant Now therefore it is stipulated that said W. A. Hart as administrator of the said estate and the parties defendant shall be as follows:

'Louise Little as administratrix of the estate of Clayton Little, deceased; Louise Little; Western Surety Company, a corporation and W. A. Hart as administrator of the estate of Clayton Little, deceased, appointed to succeed Louise Little as administratrix;' It is further stipulated that the pleadings and issues as now joined shall govern the trial and that W. A. Hart as administrator of the estate of Clayton Little shall be a party and all the allegations of the complaint shall apply to him in so far as the interests of the estate are concerned."

It is further stipulated that on this stipulation the court may make such order as may be necessary to put this stipulation into full effect.

Dated July .., 1945.

> J. K. Murray
> Attorney for Louise Little, as administratrix of the estate of Clayton Little deceased and as Attorney for Louise Little and as Attorney for W. A. Hart as administrator of the estate of Clayton Little deceased and as atty for Western Surety Company, a corporation.
> F. E. McCurdy
> Attorney for Plaintiff"

At the close of the entire case Western Surety Company moved the court for dismissal of the action as against it and the court granted the motion.

The case was submitted to the jury. The verdict was, "in favor of the Plaintiff and against Louise Little Administratrix and W. A. Hart Administrator of the Estate of Clayton Little, Deceased, defendants, and assess damages in the sum $356 48/100 of three hundred fifty-six and 48/100 Dollars without interest." Judgment was entered on this verdict December 12, 1945.

Defendants Little and Hart moved for a new trial upon two grounds—insufficiency of the evidence to justify the verdict against either of them, and errors of law occurring at the trial.

It was claimed the evidence was insufficient to justify the verdict in that the plaintiff had not presented his claim to the administrator of the estate or filed his claim "with the probate court prior to the commencement of this action or at any time;" that when Louise Little issued this check "she was not Administratrix of said estate; that consequently any act she performed prior to Letters of Administration being issued to her would not be, and is not binding upon the estate of the deceased." That the check was given by her in a representative capacity, "which—did not exist at the time; that the contract and the check were both given for a debt of the deceased, to-wit: a debt arising out of a farm lease—that the farm lease—contains a provision that all title to the property shall remain in the deceased until there is a division thereof; that there is no evidence whatsoever of any division having ever been made." That "the only increase of livestock which came into existence after the lease in question was executed was one calf of the value of Forty ($40.00) Dollars, at the time the Administratrix sold it." That the "written lease does not contain any retroactive provisions which would apply to increase of livestock in existence at the time of the execution of the lease;" that the check was "without consideration, except the consideration to the extent of Twenty ($20.00) Dollars, to-wit: one-half the value of said calf;" that there is no proof or no evidence introduced showing that W. A. Hart "was ever

appointed Administrator or ever acted as Administrator" and no proof that Hart ever became liable to the plaintiff and "the only proof of the appointment of any representative was proof of the appointment of Louise Little" and that the undisputed evidence shows "she was removed—long before the trial of this action."

The specifications of error in the trial court center around the same general propositions and particularly this that, "the Court committed error in denying the defendant W. A. Hart's motion for a directed verdict, there being no evidence whatsoever connecting W. A. Hart with the action; furthermore, there is no proof in the record that there was ever any Summons and Complaint served upon W. A. Hart in which he was designated as Administrator of the estate;" and therefore the "Court committed error in deciding—they had any jurisdiction over the defendant W. A. Hart."

On April 18, 1946 the court made an order vacating and setting aside the verdict and the judgment and granted them a new trial, the order stating in part: "provided, however, that if the defendants within ten days after the date of this Order file with the Clerk of the District Court their consent that the verdict and judgment herein be reduced to the sum of $20.00 and legal interest thereon at the statutory rate from the first day of April, 1945, then thereupon this Order shall operate as a reduction of said judgment in favor of the plaintiff and against the defendants Louise Little as administratrix and W. A. Hart, as administrator of Estate of Clayton Little deceased to the sum of $20.00 with legal interest thereon from the first day of April 1945 and thereupon judgment may be entered by the clerk of the district court for the said amount of said reduced judgment as aforementioned.

This Order is based on the grounds that the only amount that the plaintiff is entitled to recover in any event under the whole case is one-half the value of one certain calf, same being the sole increase under the lease involved in the action, to-wit: $20.00 and is based upon the Summons and Complaint, Answer, verdict

of the jury, Judgment, Minutes of the Court, stenographer's report of the testimony and exhibits, Notice of Motion for New Trial with Specifications of Error thereto attached, briefs of parties, Memorandum of the Court, dated the 4th day of April, 1946, and all the records and files in the action."

The defendants accepted the option to pay $20.00 and thereupon judgment was entered in accordance with this order.

The plaintiff appealed to this court ". . . from an order of the District Court dated February 13–1946 . . . dismissing the action against Louise Little and Western Surety Company, . . . and from an order reducing the judgment as entered in the district court in favor of the plaintiff in the sum of $383.08 to the sum of $20.00 and costs against the defendants Louise Little as administratrix of the estate of Clayton Little deceased and against W. A. Hart as administrator of the estate of Clayton Little Deceased dated April 18–1946 . . . and from a judgment entered May 20th 1946 pursuant to the last mentioned order and from the whole thereof, of both the orders and the judgment above mentioned, and demands that the judgment be reinstated as originally entered in favor of the plaintiff and against the defendants and that the judgment be also entered against the Western Surety Company, a corporation and Louise Little."

Respondents take the position: that this is a judgment against the estate, that there was "no claim ever presented to the Administratrix or Administrator nor filed with the Court;" that "Mrs. Little had no power to create any liability of the estate to any creditor. She might create a personal liability against herself;" and that "there was no consideration for the check except a possible consideration of one-half the value of—a calf."

This is not a claim against the estate. It is an action to recover money belonging to the plaintiff, had and received by the estate and placed in "the Administrator's account."

At the opening of the trial plaintiff made his position clear, stating:

"We are not suing on a debt owed by the decedent to this man; we are suing to recover part of this man's own property; and that's the kind of a claim that doesn't have to be presented but

may be sued upon under authority of an Order of the County Court."

The estate is interested in the lawsuit because the account in its name and for its use contains $ 356.48 which plaintiff claims belongs to him. The administrator of this estate has this money and the estate is chargeable with this amount, if plaintiff be correct. Whether there was a personal debt created by Mrs. Little is immaterial. The jury returned no verdict against her personally.

The evidence shows Mrs. Little had been appointed administratrix on September 6, 1944, administered the same and is not in a position to say that when she and the defendant entered into the settlement agreement she was not acting administratrix. She collected for the estate the $100 which plaintiff owed for rental of the hay land.

Respondents urge there is no proof showing what milk and cream plaintiff got from the cows. There were twenty-five cows, but only seventeen calves are involved. It is not claimed plaintiff got milk or cream from the mothers of the calves sold. "The settlement agreement" states the proceeds of the check for the seventeen sucking calves are to be divided "fifty-fifty" as one-half represents "second party's (plaintiff's) entire interest in the increase of livestock owned by the Estate on the premises rented by the deceased, Clayton Little, for the farming season of 1944." The remainder belonged to the estate. If half of the money belonged to the plaintiff then there was consideration for the check.

Respondents say there is no foundation in pleadings or evidence for judgment against the defendant W. A. Hart; that there is no proof Hart was ever appointed administrator; that he "was never properly made a party to this action;" that even if he was properly made a party no pleadings were served upon him and "no liability could be predicated against him because he stepped into the picture long after the execution and delivery of this check."

The stipulation signed by the counsel for defendants "as attorney for W. A. Hart as administrator of the estate of Clayton

Little, deceased;" states Hart had been appointed "a successor administrator of the estate of Clayton Little deceased and has qualified as such administrator" and that "said W. A. Hart is a necessary party defendant." There was no need of further proof.

There was no necessity to serve summons and complaint on Hart. The stipulation shows this. No one repudiates this stipulation, and there is nothing to indicate inadvertence in entering into it. Hart does not claim counsel had no authority to represent him in so stipulating. When he does, this feature may be considered. Neither does counsel claim he signed inadvertently or under a misapprehension of the facts.

Hart's stipulation provides that "the allegations of the complaint shall apply to him"—but there is no stipulation in regard to any answer. In so far as pleadings are concerned the only apparent failure is that Mr. Hart failed to serve an answer and so judgment might have been taken against him by default. However appellant treats the case as if the answers interposed by the other defendants constituted Hart's answer.

Respondents urge that Mrs. Little could not sell property of the estate on September 1, 1944 as she was not then administratrix. We are not concerned with whether she sold any property of the estate. The question is whether she sold any property of the plaintiff.

Plaintiff is not entitled to judgment against the surety. Western Surety Company had given a bond on behalf of Mrs. Little, as administratrix, to protect the interests of the estate, and later bonded Hart. Hart was not administrator when the sale was made. He had nothing to do with the transaction. The sale by Mrs. Little and the retention of plaintiff's interest all occurred before the Surety Company issued either bond. The trial court was right in holding the Surety Company was not responsible to the plaintiff on either bond.

Plaintiff is not in position to demand a personal judgment against Mrs. Little. That issue was submitted to the jury. Rightly or wrongly the jury found against him. Plaintiff did not move the trial court to direct a personal judgment against her

nor ask for such judgment notwithstanding the verdict. The trial court did not have such matter before it after the verdict was rendered and when plaintiff had judgment entered on the verdict he received, he made no appeal to the trial court to remedy what he now holds was error. The record shows Mrs. Little is no longer administratrix, was not when the case was tried and consequently does not have control of the fund into which plaintiff's money was placed. It is Hart who has control thereof.

The trial court gave an extremely limited interpretation to the contract, evidently differentiating between the terms "during the season of farming" and "during this lease" and determined that it applied only to the calf born after the date of the contract. The trial court held that the only interest the plaintiff had in the increase was a one-half interest in this calf.

The plaintiff was to have "one-half of all increase—*during this lease.*" The lease was for the season of farming. The term "season of farming" or "farming season" is well understood in this state. The court takes judicial notice "of the meaning of current phrases which everybody understands." Section 31-1002, subd 85. It is common knowledge that in this state the "season of farming" or any year begins long before April 26 of the year. There is no date stated in the contract for the beginning of the season nor its ending nor is this determined by any formula as is a general election day. The parties to the lease evidently knew this and so did the jury. The lease does not provide that plaintiff's interest is confined to increase occurring during the "remainder of the farming season" nor "to increase hereafter," nor is any other term used indicating that the term "season of farming" is any other than the one that is commonly understood. When the parties contracted they contracted for "the season of farming" in 1944. Sixteen of the "increase" of these twenty-five cows were on the place when Little executed the lease and he turned them over to Funston. Clearly Little knew this and knew these calves were dropped during the "season of farming" of 1944 and therefore *during this lease* for that was the term of the so-called lease. The landlord was a sick man in the hospital, the farming season was

advancing rapidly. The landlord knew his physical condition, evidently (he died about seven weeks thereafter), and it is not reasonable to assume the parties intended that plaintiff was to look after these sixteen calves, forego the milk and cream and furnish his labor in this respect free. He had the option of getting the milk and the cream from the mothers of these sixteen calves or of taking one-half of the calves. He chose the latter.

While the parties to the contract left the matter in a more or or less indefinite state as to time the construction they placed upon it is of some value. Mrs. Little was not dealing with a debtor of the estate. She was dealing with one who claimed she had his money. That the administratrix construed the contract as we have set forth is evident from the settlement agreement which was drawn for her by her attorney. It was dictated by him, drawn in his office in accordance with the agreement of the parties and recognizes the plaintiff was entitled to one-half of the sales price of these "seventeen (17) sucking calves." Both had to endorse the check, and Mrs. Little agreed that half represented plaintiff's "entire interest in the increase of livestock owned by the estate on the premises, rented—*for the farming season of 1944;*" and she put this money into the "administrator's account." She was present when the settlement agreement was dictated and written. She says she signed it because she thought it was right, though she had received advice not to sign it, and as soon as plaintiff gave her his check she cashed it, but under the advice of her counsel stopped payment of the check she had issued.

Plaintiff testified that the settlement agreement was made in the office of the defendant's counsel, both checks were issued at the same time, counsel dictated the statement, his stenographer wrote it and the parties signed it. Plaintiff gave up his option to farm the land for the succeeding year, gave up his interest in some pigs (the nature of this latter claim is not shown) agreed to move off the land at a date set and did. Counsel did not testify.

The trial court had extreme difficulty in controlling the presentation of the case. The innumerable objections set forth in the

record and the various comments and interruptions by counsel rendered it extremely difficult for the trial court to get an orderly presentation of the only real vital issue in the case—the interpretation of this clause of the contract dealing with the increase.

It is clear from the evidence that when the contract or lease was signed it was the understanding of the owner of the land and of the plaintiff that the sixteen calves on the place when the contract was made and which were turned over to Funston were among the "increase" under consideration and that one-half of such increase from those cows during that farming season of 1944 was to belong to the plaintiff; the seventeen calves were born during "the season of farming" of the year 1944, as even the oldest was born about the middle of March; these calves were sold by the administratrix; one-half the net proceeds was the property of the plaintiff; the administratrix kept the money which belonged to the plaintiff and placed it in the bank account of the estate later controlled by her successor W. A. Hart. This money in the administrator's account does not belong to the estate, but to the plaintiff.

The order and judgment setting aside the verdict and the judgment entered thereon, and ordering the new judgment, are reversed and the original judgment is reinstated so as to require respondents to turn over to the plaintiff his money placed in the administrator's account by administratrix Little, with costs.

CHRISTIANSON, Ch. J., and NUESSLE, BURKE and MORRIS, JJ., concur.